## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSLYVANIA
### ALLENTOWN DIVISION

| | |
|---|---|
| NUTRAMAX LABORATORIES, INC. and NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC., | Case No. |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| PENNSL LLC, | |
| Defendant. | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs Nutramax Laboratories, Inc. ("Nutramax Labs") and Nutramax Laboratories Veterinary Sciences, Inc. ("Nutramax Vet") (collectively, "Nutramax") file this Complaint against PENNSL LLC ("Defendant") and in support allege as follows:

## NATURE AND BASIS OF ACTION

1.      This action has been filed to stop unauthorized resellers from unlawfully interfering with Nutramax's contractual relationships with its authorized resellers, and from selling and distributing, under Nutramax's well-known trademarks, products that are materially different from Nutramax's authorized products without Nutramax's consent or supervision. Through its unauthorized sales, Defendant has unlawfully misappropriated the goodwill associated with Nutramax's COSEQUIN and NUTRAMAX LABORATORIES trademarks (the "Nutramax Marks") without subjecting the Nutramax products it sells to the same rigorous storage and distribution, product knowledge, and customer support requirements that Nutramax requires of its authorized resellers.

2.      Defendant's actions constitute (1) trademark infringement in violation of Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)); (2) unfair competition and false designation of

origin in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); and (3) tortious interference with a contract under Pennsylvania common law. In response to these actions, Nutramax is seeking injunctive relief, actual damages, disgorgement of profits, punitive damages, costs, and reasonable attorneys' fees.

## THE PARTIES

3.      Plaintiff Nutramax Labs is a corporation organized and existing under the laws of the State of South Carolina. Nutramax Labs maintains its headquarters and principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720. Nutramax Labs is the owner of the Nutramax Marks which identify supplements for companion animals sold to consumers throughout the United States and abroad.

4.      Plaintiff Nutramax Vet is a corporation organized and existing under the laws of the state of South Carolina. Nutramax Vet maintains its headquarters and principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720. Nutramax Vet is the licensee of the Nutramax Marks, which it uses to identify supplements for companion animals sold to consumers throughout the United States and abroad.

5.      Defendant PENNSL LLC ("PENNSL") is a Pennsylvania Limited Liability Company. Its address listed with the Pennsylvania Secretary of State's Office is 2980 Linden Street, Unit F, Bethlehem, Pennsylvania 18017-3283. PENNSL is selling unauthorized and infringing Nutramax products to consumers throughout the United States through the e-commerce platform Amazon.com under the seller account name ""Prime Sell"" (the "Seller Account"). The seller page for the "Prime Sell" account also lists the same 2980 Linden Street address above.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over Nutramax's federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1337, and 1338 because this action arises under the Lanham Act (15 U.S.C. §§ 1051 *et seq*).

7.      This Court has supplemental jurisdiction over Nutramax's Pennsylvania common law claim pursuant to 28 U.S.C. § 1367.

8.      PENNSL is subject to the personal jurisdiction of this Court. PENNSL was incorporated under Pennsylvania law and it is "at home" in Pennsylvania.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is a resident of this district engaging in tortious and unlawful conduct in this judicial district by advertising, offering to sell and/or selling unauthorized and infringing Nutramax products.

## FACTUAL BACKGROUND

### I.    NUTRAMAX AND ITS PRODUCTS

10.     Nutramax researches, develops, and sells high-quality, innovative health supplements. Nutramax's wide variety of animal health supplements are utilized for several purposes, including to support intestinal, joint, liver, and immune health. Nutramax's health supplement products are highly regarded in the nutritional supplement industry because they are supported by scientific research and studies.

11.     Over the years, Nutramax has spent millions of dollars researching and developing innovative health supplement products. Every year, Nutramax devotes significant financial resources – in the form of marketing, advertising, and other initiatives – to building its brand as a provider of high-quality, safe, and effective animal health supplements.

12.     Nutramax sells its health supplement products through a diversified portfolio of well-recognized and widely trusted brands.

13.     Each Nutramax product bears the NUTRAMAX LABORATORIES mark in addition to a mark distinguishing the product's specific line. For example, the packaging for Nutramax's Cosequin® products bears both the NUTRAMAX LABORATORIES and COSEQUIN marks.

14.     Cosequin® supplements are some of the most popular joint health products in the companion animal market. Nutramax has generated significant sales of its Cosequin® products nationwide, including in this judicial district.

15.     Since at least as early as 1991, Nutramax has continuously and exclusively used the NUTRAMAX LABORATORIES mark in interstate commerce to identify its products.

16.     Since at least as early as 1992, Nutramax has continuously and exclusively used the COSEQUIN mark in interstate commerce to identify dietary supplements for animals.

17.     The Nutramax Marks appear prominently on all COSEQUIN products and in all advertising and marketing materials for those products.

18.     In recognition of Nutramax's exclusive right to use the Nutramax Marks in commerce in the United States, the U.S. Patent and Trademark Office has issued Nutramax registrations for those marks, namely, U.S. Reg. No. 2,231,260 (NUTRAMAX LABORATORIES), U.S. Reg. No. 4,077,241 (NUTRAMAX LABORATORIES (Stylized)), U.S. Reg. No. 4,654,181 (NUTRAMAX LABORATORIES VETERINARY SCIENCES, INC. (Stylized)), U.S. Reg. No. 1,791,253 (COSEQUIN), U.S. Reg. No. 5,662,197 (COSEQUIN). True and correct copies of these registrations are attached as Exhibit A.

19.     The registrations for the Nutramax Marks are *prima facie* evidence of their validity and constitute constructive notice of Nutramax's ownership of the Nutramax Marks in accordance with Sections 7(b) and 22 of the Lanham Act (15 U.S.C. §§ 1057(b) and 1072).

20.     Apart from the '197 registration for COSEQUIN, the registrations for the Nutramax Marks are incontestable pursuant to Section 15 of the Lanham Act (15 U.S.C. § 1065) and constitute conclusive evidence of Nutramax's exclusive right to use the Nutramax Marks in commerce in the United States pursuant to Section 33(b) of the Lanham Act (15 U.S.C. § 1115(b)).

21.     By virtue of Nutramax's exclusive use of the Nutramax Marks in interstate commerce, Nutramax is the exclusive owner of all right, title, and interest in the Nutramax Marks and the corresponding registrations.

22.     Over the years, Nutramax has diligently protected the Nutramax Marks and their accompanying goodwill.

## II.    NUTRAMAX AND ITS AUTHORIZED RESELLERS

23.     Nutramax distributes its products through multiple trade channels, including (but not limited to) the veterinary channel, brick-and-mortar retail, hybrid retailers (with a mix of brick-and-mortar and ecommerce outlets) and "pure play ecommerce" (resellers that only have an online sales outlets).

24.     Nutramax typically enters into written agreements with each of its authorized resellers and distributors in each trade channel.

25.     All, or substantially all, of these agreements, across trade channels, include provisions restricting to whom each authorized party can sell Nutramax products (e.g., only to end users, only to particular resellers, only on particular websites, etc.).

26.     In the pure play ecommerce channel, Nutramax's products are distributed through a network of authorized resellers, substantially all of whom enter into agreements with Nutramax governing their sale of Nutramax's products (the "Authorized Reseller Agreements").

27.     All, or substantially all, of the Authorized Reseller Agreements include the following requirements to ensure a high level of product quality and customer service:

- The reseller is required to maintain qualified personnel with knowledge of the specifications, features, and use of Nutramax products and provide quality post-sale support to consumers who purchase Nutramax products.

- The reseller is required to store Nutramax products in a cool, dry area out of direct sunlight in a controlled room with a temperature between 40 and 70 degrees Fahrenheit.

28.     These provisions ensure that the quality of the products and the level of customer service and support remain at the high level consumers have come to expect when purchasing genuine Nutramax products.

29.     Nutramax products that are sold by resellers who are not authorized are materially different from the Nutramax products that do travel through proper, authorized distribution channels.

30.     In particular, because unauthorized resellers are not contractually bound by an Authorized Reseller Agreement with Nutramax, such resellers are not contractually obligated to properly store Nutramax products at conditions that maintain the products' quality.

31.     Nutramax therefore cannot know or guarantee the quality of the products sold to end users by unauthorized sellers; consumers, however, expect that when they purchase "new"

Nutramax products they are purchasing products that have been handled and stored as the manufacturer intended.

32.     Unauthorized resellers of Nutramax's products are also not contractually bound to employ someone with knowledge of the specifications, features, and use of Nutramax's products, as is required under the Authorized Reseller Agreement.

33.     Consumers who purchase Nutramax products from such unauthorized resellers are therefore unable to access the pre- and post-sale support to which consumers who purchase from Nutramax's authorized resellers have access.

## III.    DEFENDANT'S UNLAWFUL CONDUCT

34.     Defendant, who, upon information and belief, is a "pure play" ecommerce seller with no brick-and-mortar retail or other sales outlets, is engaging in the unauthorized sale of Nutramax's Cosequin® Minis Maximum Strength Joint Health Supplement and Cosequin® Joint Health Supplement for Cats (the "Cosequin® Supplements") though the Seller Account on Amazon.com. True and correct copies of the product pages on which Defendant is selling these products on Amazon.com are attached hereto as Exhibit B and Exhibit C.

35.     Defendant is using the Nutramax Marks in conjunction with this unauthorized sales activity.

36.     Consumers, relying on Amazon's reputation – and the reputation of the Nutramax Marks – have no reason to suspect that the Nutramax products purchased from Defendant on Amazon.com are materially different from those purchased directly from Nutramax's authorized resellers.

37.     Consumers are therefore being misled to believe that the Nutramax products sold by Defendant are the same as the goods Nutramax sells online through authorized resellers when, in fact, they are materially different.

38.     Upon information and belief, the Nutramax products sold by Defendant do not conform to the requirements of the Authorized Reseller Agreements. The Authorized Reseller Agreements are meant to ensure that end users receive the high-quality products and customer service that they have come to expect from Nutramax.

39.     In any event, by selling Nutramax products as "new" without being party to an Authorized Reseller Agreement, Defendant is selling to consumers products that are materially different from Nutramax products sold by authorized resellers because, contrary to consumer expectation, Defendant is not obligated to store Nutramax products at proper temperatures and is not obligated to ensure the quality of pre- and post-sale support provided by authorized resellers.

40.     The unauthorized sale, using the Nutramax Marks, of products that are materially different from genuine Nutramax products harms the substantial goodwill that Nutramax has accrued in the Nutramax Marks.

41.     Nutramax is the sole distributor of the Cosequin® Supplements and carefully selects its authorized online resellers and distributors.

42.     Upon information and belief, Defendant obtained the Nutramax products that it is selling from one or more of Nutramax's authorized resellers and/or distributors.

43.     As noted above, Nutramax's agreements with its resellers and distributors specify to whom those entities can sell Nutramax products. There is no reseller or distributor who Nutramax has explicitly authorized to sell Nutramax products to Defendant.

44.     By obtaining the Nutramax products in this manner, Defendant is therefore causing one or more of Nutramax's authorized resellers or distributors to be in violation of their agreements with Nutramax.

45.     Nutramax has previously notified Defendant that its unauthorized sale of Nutramax products directly interfered with Nutramax's business relationship with one or more of Nutramax's authorized resellers or distributors. Nutramax sent Defendant multiple communications—including on November 10, 2023 (via UPS next day air and the seller messaging assistant platform on Amazon.com), November 15, 2023 (via UPS next day air), and November 16, 2023 (via the seller messaging assistant platform on Amazon.com)—to this effect, with no response from Defendant.

46.     Despite this knowledge, Defendant has continued to engage in the unauthorized sale of Nutramax products obtained, upon information and belief, from one or more of Nutramax's authorized resellers or distributors, therefore continuing to intentionally cause those resellers and/or distributors to be in breach of their agreements with Nutramax.

47.     Nutramax has no association or affiliation of any kind with Defendant or its online businesses, and Nutramax has never authorized Defendant to use the Nutramax Marks or sell Nutramax products.

## COUNT I
## Trademark Infringement (15 U.S.C. § 1114)

48.     Nutramax incorporates by reference the allegations set forth in paragraphs 1 through 47 of this Complaint as if fully repeated and restated here.

49.     The Nutramax Marks identify the goods that are offered and warranted by Nutramax and Nutramax alone. The marks serve as symbols of the substantial goodwill that Nutramax has accrued in its marks.

50.     Defendant is using the federally registered Nutramax Marks in interstate commerce without Nutramax's authorization or consent in a manner that is likely to cause confusion, mistake, or deception as to whether the goods originate from Nutramax, whether the goods are sponsored or endorsed by Nutramax, and/or whether the goods are associated or affiliated with Nutramax.

51.     Despite Defendant's knowledge of Nutramax's rights in the Nutramax Marks, Defendant continues to use those marks to pass off its unauthorized goods as genuine goods sold by Nutramax or one of its authorized resellers.

52.     The goods sold by Defendant are not genuine Nutramax products because they are materially different from Nutramax's genuine products, in that they are not subject to Nutramax's storage condition requirements and are not subject to Nutramax's product support and knowledge requirements that are imposed on Nutramax's authorized "pure play" ecommerce resellers.

53.     Defendant's conduct constitutes knowing and willful trademark infringement under Section 32 of the Lanham Act (15 U.S.C. § 1114).

54.     Defendant's conduct has enabled it to earn profits to which it is not in law, equity, or good conscience entitled, and has unjustly enriched Defendant, all to Defendant's profit and Nutramax's damage.

55.     Nutramax is entitled to injunctive relief under 15 U.S.C. § 1116 because there is no adequate remedy at law to account for Defendant's infringement. Defendant's infringement will continue to cause irreparable harm unless and until it is enjoined by this Court.

56.     As a result of the intentional, willful, and wanton actions of Defendant as set forth above, Nutramax is entitled to recover (1) Nutramax's actual damages (which, at the Court's discretion, may be increased to an amount three times the amount proven as actual damages); (2)

a disgorgement of Defendant's profits; (3) the costs of the action; and – because this is an exceptional case – (4) reasonable attorneys' fees.

## COUNT II
### False Designations of Origin & False Descriptions (15 U.S.C. § 1125(a))

57.     Nutramax incorporates by reference the allegations set forth in paragraphs 1 through 47 of this Complaint as if fully repeated and restated here.

58.     Defendant is knowingly selling unauthorized Nutramax products bearing the Nutramax Marks in interstate commerce in a manner that is likely to cause consumer confusion, mistake, or deception as to the true source of the goods and as to whether Defendant is associated with or endorsed by Nutramax.

59.     The goods sold by Defendant are not genuine Nutramax products because they materially differ from Nutramax's genuine products, in that they are not subject to Nutramax's storage condition requirements and are not subject to Nutramax's product support and knowledge requirements imposed on Nutramax's authorized "pure play" ecommerce resellers.

60.     Defendant's conduct constitutes false designations of origin and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)).

61.     Defendant's conduct has enabled it to earn profits to which it is not in law, equity, or good conscience entitled, and has unjustly enriched Defendant, all to Defendant's profit and Nutramax's damage.

62.     Nutramax is entitled to injunctive relief under 15 U.S.C. § 1116 because there is no adequate remedy at law to account for Defendant's infringement. Defendant's infringement will continue to cause irreparable harm unless and until it is enjoined by this Court.

63.     As a result of the intentional, willful, and wanton actions of Defendant as set forth above, Nutramax is entitled to recover (1) Nutramax's actual damages (which, at the Court's

- 11 -

discretion, may be increased to an amount three times the amount proven as actual damages); (2) Defendant's profits; (3) the costs of the action; and – because this is an exceptional case – (4) reasonable attorneys' fees.

### COUNT III
**Pennsylvania Common Law Tortious Interference with a Contract**

64.     Nutramax incorporates by reference the allegations set forth in paragraphs 1 through 47 of this Complaint as if fully repeated and restated here.

65.     Nutramax maintains close business relationships with its authorized resellers and distributors. These relationships are formalized in written agreement.

66.     Defendant was given notice of Nutramax's contractual relationships with its authorized resellers and distributors. Additionally, Defendant was given notice of the fact that its unauthorized sale of Nutramax goods interfered with Nutramax's contractual relationships with its authorized resellers and distributors. Yet Defendant has continued to source and sell its unauthorized products.

67.     Upon information and belief, Defendant is intentionally inducing one or more of Nutramax's authorized resellers and/or distributors to breach their agreements with Nutramax by offering to buy and/or buying Nutramax products from one or more of them—none of whom are authorized to sell Nutramax products to Defendant for resale.

68.     Upon information and belief, Defendant's interference with Nutramax's agreements with its authorized resellers and/or distributors has caused those parties to divert their authorized Nutramax products through unauthorized channels in breach of their agreements with Nutramax.

69.     Defendant's flagrant and continued sale of unauthorized Nutramax products has harmed and will continue to harm Nutramax unless and until this Court enjoins Defendant's unauthorized sales.

70.     Defendant's failure to be bound by Nutramax's authorized reseller requirements, including requirements regarding storage conditions and product knowledge and support, render the Defendant's products materially different from authorized Nutramax products that travel in the appropriate distribution chain that flows from Nutramax to authorized resellers and distributors to end users.

71.     Defendant's conduct constitutes intentional tortious interference with a contract for which Defendant is liable to Nutramax.

72.     Nutramax is entitled to injunctive relief because there is no adequate remedy at law to address for Defendant's tortious conduct. Defendant's tortious activity will continue to cause irreparable harm unless and until it is enjoined by this Court.

73.     As a result of the intentional, willful, and wanton actions of Defendant as set forth above, Nutramax is entitled to recover (1) Nutramax's actual damages and (2) punitive damages.

## JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Nutramax demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Nutramax prays for relief and judgment as follows:

1.      The Court enter judgment that the Nutramax Marks are valid and enforceable; that Nutramax owns those marks; that Defendant has infringed those marks; that Defendant has used false designations of origin and engaged in unfair competition in violation of 15 U.S.C. § 1125(a);

and that Defendant has tortiously interfered with Nutramax's contracts with its authorized resellers and distributors in violation of Pennsylvania common law.

2.      Defendant, its affiliates, officers, agents, servants, employees, attorneys, and representatives, as applicable, and all persons acting for, with, by, through, under, or in active concert with them, be permanently enjoined and restrained from:

(a)      using the Nutramax Marks or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, or sale of any product that Nutramax has not authorized to be sold by Defendant in connection with the Nutramax Marks;

(b)      passing off, inducing, or enabling others to sell or pass off any product as a genuine COSEQUIN or NUTRAMAX LABORATORIES product or any other product produced by Nutramax that is not Nutramax's product or not produced under the authorization, control, or supervision of Nutramax and approved by Nutramax for sale by Defendant;

(c)      shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Nutramax to be sold or offered for sale by Defendant; and

(d)      otherwise competing unfairly with Nutramax in any manner.

3.      The Court enter an Order that, upon Nutramax's request, Defendant, those in privity with Defendant, and those with notice of the injunction – including any online retailers, social media platforms, internet search engines, and e-mail service providers for Defendant – shall:

(a)      disable and cease providing services for any accounts through which Defendant engages in the unauthorized advertising, promotion, or sale of COSEQUIN or NUTRAMAX LABORATORIES products;

(b)      disable and cease displaying any advertisements used by or associated with Defendant in connection with the unauthorized advertising, promotion, or sale of COSEQUIN or NUTRAMAX LABORATORIES products; and

(c)      Deliver to Nutramax or destroy, at Nutramax's discretion, all Nutramax products or other products bearing the Nutramax Marks in Defendant's possession or held on behalf of Defendant.

4.      The Court enter an Order awarding Nutramax: (1) Nutramax's actual damages (which, at the Court's discretion, may be increased to an amount three times the amount proven as actual damages for Counts I & II); (2) Defendant's profits; and (3) for Counts I & II, the costs of the action.

5.      The Count enter an Order awarding Nutramax punitive damages on Count III.

6.      This case be deemed an exceptional case and Nutramax be awarded its reasonable attorneys' fees incurred in connection with Counts I & II pursuant to 15 U.S.C. § 1117.

7.      Nutramax be granted such other, different, and additional relief as the Court deems just and proper.

8.      Defendant, within fourteen (14) days after service of judgment upon them, be ordered to file with the Court and serve upon Nutramax a written report under oath setting forth in detail the manner and form in which Defendant has complied with the requirements of the judgment.

Respectfully submitted, this 14th day of December, 2023.

By: _____
/s/Douglas J. Smillie

Douglas J. Smillie
dsmillie@fblaw.com
Bar No. 36687
Fitzpatrick Lentz & Bubba, P.C.
Two City Center
645 West Hamilton Street,Suite 800
Allentown, PA 18101

Of counsel (*Pro Hac Vice Forthcoming*)

Jason D. Rosenberg
jason.rosenberg@alston.com
Georgia Bar No. 510855
Uly S. Gunn
sam.gunn@alston.com
Georgia Bar No. 261871
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000

*Attorneys for Plaintiffs Nutramax
Laboratories, Inc. and Nutramax
Laboratories Veterinary Sciences, Inc.*